UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
EMILY SHIM, JEFFREY SUH,
SOO YOUNG CHOI, SEUNG RYUN CHOI,
and ALEX CHIN,

                          Plaintiffs,

v.

MILLENNIUM GROUP, MILLENNIUM (USA)
LLC, MILLENNIUM HEALTHCARE OF
FLUSHING LLC, MILLENNIUM MEDICAL
HEALTHCARE GROUP PLLC, MILLENNIUM
HEALTHCARE USA LLC, DANNY VASWANI,
JOHN MUNAFO, and
JOHNATHAN R. JOHNSON,

                          Defendants.
------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

08-CV-4022 (FB) (VVP)

POHORELSKY, Magistrate Judge:

       The plaintiffs obtained a default judgment against all defendants in January 2010, and Judge Block has referred to me this motion for attorneys' fees. The plaintiffs brought this action in October 2008, asserting violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, related violations of the New York Labor Law (the "NYLL"), § 191 *et seq.*, and a breach of contract claim.[1] The background facts are described in Judge Block's January 2009 order determining liability. *See Shim v. Millennium Group*, No. 08-CV-4022, 2009 WL 211367, at *1-2 (E.D.N.Y. Jan. 28, 2009) (granting motion for default judgment). Familiarity with those facts and with the procedural developments is assumed. The plaintiffs now request $102,762 in attorneys' fees and $1,561.64 in costs. For the reasons below, I respectfully recommend that the plaintiffs be awarded $34,254 in attorneys' fees and $1,561.64 in costs.

---

[1] Except for Johnathan Johnson, no defendant filed an answer or responded in any way, or otherwise moved or appeared in connection with this matter. After a default had already been entered, Johnson requested to be removed from the litigation, and then requested a stay of the proceedings. The court denied both requests.

I. **DISCUSSION**

   A. **The Presumptively Reasonable Fee**

Establishing the amount of reasonable attorneys' fees has been the subject of extended discussion in the Second Circuit in recent years. *See generally Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009); *Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009); *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), *superseding* 493 F.3d 110 (2d Cir. 2007). Reasonable attorneys' fees used to be calculated by what was known as the "lodestar" method, which entailed determining the "number of hours reasonably expended on the litigation [and] multipl[ying that figure] by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Whitney v. Jet Blue Airways Corp.*, No. 07-CV-1397, 2009 WL 4929274, at *2 (E.D.N.Y. Dec.21, 2009) (providing background and history). Courts would then adjust the lodestar figure by a multiplicative figure, if need be, to reflect the specific considerations of a particular case. *See Arbor Hill*, 522 F.2d at 186, 190. The reasonableness of hourly rates was guided by the market rate "[p]revailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation," *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Hensley*, 461 U.S. at 433, while the relevant community was generally the "district in which the court sits," *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).

More recently, however, the Second Circuit signaled a departure from the "lodestar" language, in favor of a modified approach that focuses on calculating a "presumptively reasonable fee." *See Arbor Hill*, 522 F.3d at 190; *see also Simmons*, 575 F.3d at 172; *Barfield*, 537 F.3d at 151. Notwithstanding the abandonment of the "lodestar" approach, the presumptively reasonable fee is

still determined by reference to the number of hours reasonably expended on a matter and the reasonable fee to be charged for those hours. *See generally Bliven*, 579 F.3d at 213. Under this approach, the court considers a multitude of case-specific factors[2] in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplies that rate by the number of hours reasonably spent on the case. *Arbor Hill*, 522 F.3d at 184, 190. The product is known as the presumptively reasonable fee. *See id.* Thus, district courts must now "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190. (emphasis in original). This determination is undertaken consistent with the principle that a "reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190.

The Second Circuit recently clarified the contours of its approach to attorneys' fees and the presumptively reasonable fee. *See McDaniel v. County of Schenectady*, 595 F.3d 411 (2d Cir. 2010). The Circuit reiterated that the presumptively reasonable fee represents an approximation of "what a competitive market would bear." *Id.* at 420. Whereas the traditional lodestar approach had multiplied the hourly rate by the number of hours worked and *then* used the *Johnson* factors to

---

[2] These factors include, but are not limited to, the "complexity and difficulty of the case, the available expertise and capacity of the client's other counsel, the resources required to prosecute the case effectively, the timing demands of the case, [and] whether an attorney might have an interest in achieving the ends of the litigation or might initiate the representation himself," – *Arbor Hill*, 522 F.2d at 184, 187-90 – as well as the twelve factors the Fifth Circuit employed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson* factors include (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to properly perform the relevant services; (4) the preclusion of other employment attendant to counsel's acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases. *Johnson*, 488 F.2d at 717-19.

reflect case-specific considerations, the *Arbor Hill* approach essentially front-loads the *Johnson* factors.³  *See McDaniel*, 595 F.3d at 420 (citing *Arbor Hill* and assessing case-specific considerations at the "outset, [and] factoring them into [the court's] determination of a reasonable hourly rate for the attorneys' work."); *see also Saunders v. City of New York*, No. 07-CV-830, 2009 WL 4729948, at *6 (S.D.N.Y. Dec. 9, 2009) (contrasting the lodestar and *Arbor Hill* methods and describing how the latter considers *Johnson* factors "earlier in the fee calculation process").  The court in *McDaniel* observed that

> [f]rom a mathematical perspective, of course, it makes little difference whether a court, following *Arbor Hill*, considers case-specific factors to estimate a reasonable rate for an attorney's services, which is then multiplied by the number of hours worked, or whether the court takes the traditional approach and considers those same factors in calculating a multiplier to the lodestar.  The benefit of *Arbor Hill's* [sic] methodology is that by considering case-specific factors at the outset, the district court's focus on mimicking a market is maintained.

595 F.3d at 422 (citing *Arbor Hill*, 522 F.3d at 192); *see also Saunders*, 2009 WL 4729948, at *6.

In April, the Supreme Court issued a seemingly strong endorsement of the more traditional lodestar approach and lodestar language.  *See Kenny A.*, 130 S. Ct. at 1672-74.  The extent to which the Court's use of the lodestar in that case implicitly calls into question the Second Circuit's

---

³ The Supreme Court has recently expressed skepticism with the propriety of the *Johnson* approach, arguing that it gives too little guidance to judges by placing the emphasis on factors and considerations that are overly subjective.  *See Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672 (2010) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986)).  Instead, it found that the lodestar approach provided better limits on a judge's discretion by making the determination more objective, providing for fee awards that are more predictable and less disparate.  *See Kenny A.*, 130 S. Ct. at 1672.  However, the *Johnson factors*, as opposed to the *Johnson method*, are still relevant in informing the court's determination of a reasonable fee and a reasonable hourly rate.  *See McDaniel*, 595 F.3d at 422.  *Kenny A.* cautions against using a strict *Johnson* approach as the primary basis for determining reasonable attorneys' fees, but nowhere calls into question the idea of using relevant *Johnson* factors in helping to come to a reasonable fee.  Indeed, the Court's fears of unrestrained discretion in applying a pure *Johnson* approach are largely absent from the more cabined methods of calculating a presumptively reasonable fee in this Circuit.

endorsement of a presumptively reasonable fee and rejection of both the lodestar approach and lodestar language, is less than clear. The Court recognized, however, that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 1672 (emphasis in original). That too is the primary focus of the *Arbor Hill* line of cases. The court also noted that relevant, case-specific factors such as the novelty or complexity of the case are already "subsumed" or "included" in the lodestar figure when determining a reasonable fee. *See Kenny A.*, 130 S. Ct. at 1673 (citing authorities). Therefore, whether the calculation is referred to as the lodestar or as the presumptively reasonable fee, courts will take into account case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expended.

### 1. Reasonable Hourly Rate

The plaintiffs in this case are represented by the large international law firm Dewey & LeBoeuf. Dewey has submitted a declaration concerning the personnel and the individual rates charged for the five associates, one staff attorney, one partner, two paralegals, and one summer associate who performed work on the matter. The hourly rates range from $80 for the paralegals, to $150 for the summer and junior associates, to $250 for the staff attorney and senior associate, to $350 for the partner. Little was submitted as to the experience, skill, training, or specializations of the attorneys involved, but the court is convinced that the rates requested are reasonable and well in line with prevailing market rates in this district. *See Cho v. Koam Med. Servs.*, 524 F. Supp. 2d 202, 208 (E.D.N.Y. 2007).

As previously mentioned, the court establishes a reasonable hourly rate by looking to the prevailing market rates for comparable services in the district in which the case is filed. *See Blum*, 465 U.S. at 896 n.11; *Polk*, 722 F.2d at 25. *Whitney* invaluably collected recent cases on reasonable hourly rates for partners and associates in the Eastern District of New York. *See Whitney*, 2009 WL 4929274, at *7 (listing cases and approving an hourly rate of $350 for experienced attorney seeking a $450 hourly rate). As the court observed, the "rates applied in this district have ranged widely depending on the nature of the firm, the experience of the lawyer and the type of case." *Whitney*, 2009 WL 4929274, at *7. As *Whitney* was decided quite recently and sets forth a good catalogue on rates, it is worth surveying the cases it cited. *See Gutman v. Klein*, No. 03-CV-1570, 2009 WL 3296072, at *2-3 (E.D.N.Y. Oct. 13, 2009) (approving hourly rates between $300 and $400 for partners, $200 and $300 for senior associates, and $100 and $200 for junior associates); *Melnick v. Press*, No. 06-CV-6686, 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009) (noting market rates of between $200 and $375 for partners and between $100 and $295 for associates); *Moran v. Sasso*, No. 05-CV-4716, 2009 WL 1940785, at *4 (E.D.N.Y. July 2, 2009) (noting rates of $200 to $350 for partners and $200 to $250 for senior associates); *Duverger v. C & C Duplicators, Inc.*, No. 08-CV-0721, 2009 WL 18132229, at *2 (E.D.N.Y. June 25, 2009) (listing market rates as between $200 and $350 for partners, and $200 and $250 for senior associates); *Motorola, Inc. v. Abeckaser*, No. 07-CV-3963, 2009 WL 2568529, at *4-5 (E.D.N.Y. Aug. 5, 2009); *Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.*, No. 07-CV-656, 2007 WL 4324019, at *6 (E.D.N.Y. Dec. 7, 2007) (providing market rates between $200 and $375 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates); *Baruch v. Healthcare Receivable Mgmt, Inc.*, No. 05-CV-5393, 2007 WL 3232090, at *5 (E.D.N.Y. Oct. 30, 2007) (noting hourly rates of $200 to

$375 for partners); *Expeditors Int'l of Wash., Inc. v. Rubie's Costume Co., Inc.*, No. 03-CV-3333, 2007 WL 430096, at *2 (E.D.N.Y. Feb. 2, 2007) (noting partner rates between $200 and $375 per hour).

As the hourly rates requested here are well within the ranges provided by these cases, the court should adopt them when calculating the presumptively reasonable fee. There is little about the particular circumstances of this case that would warrant an hourly rate either higher than or lower than the market rate in this district and the hourly rates requested.

### 2. Reasonable Number of Hours Worked

Even after *Arbor Hill* modified the lodestar approach, determining reasonable attorneys' fees still requires a review of reasonably detailed contemporaneous time records, as contemplated by *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Courts are given broad discretion to evaluate the reasonableness of the number of hours expended. *See Anderson v. Sotheby's, Inc.*, No. 04-CV-8180, 2006 WL 2637535, at *1 (S.D.N.Y. Sept. 11, 2006); *see also Hensley*, 461 U.S. at 434; *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997); *Duke v. County of Nassau*, No. 97-CV-1495, 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003). In considering what is reasonable, courts "should exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley*, 461 U.S. at 434). Courts should consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). A court has broad discretion to "trim the fat" in an application for attorneys' fees, and to eliminate excessive or duplicative hours. *See, e.g.*, *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d. Cir. 1988); *Carey*, 711 F.2d at 1146-47. The exercise of that discretion suggests

applying heavy scrutiny to Dewey's request. Dewey has submitted billing records that show for each attorney the date on which the work was performed, the nature of the work, and the hours spent on the matter. The number of hours billed on this case – 580 – is staggering, given that this is a straightforward FLSA case with a routine default judgment. It is thus clear that given the nature of this case, 580 hours is excessive, though it less clear exactly how much of that should be trimmed.

Considerable guidance is provided by *Cho v. Koam Med. Servs.*, 524 F. Supp. 2d 202 (E.D.N.Y. 2007). That case also involved straightforward FLSA and NYLL claims against a medical services provider by multiple plaintiffs against multiple defendants, both corporate and individual. *Id.* at 205. All but one of the defendants defaulted and did not appear in the litigation at all. *Id.* One defendant did appear *pro se*, and the case culminated in a one-day bench trial before Judge Vitaliano. *Id.* The court awarded damages totaling $26,554.14. *Id.* Dewey & LeBoeuf also represented the plaintiffs *pro bono*, and moved for attorneys' fees in the amount of $414,563.13. *Id.* at 206. Judge Vitaliano took serious issue with the amount of the request and instead awarded $112,211.75, approximately one-fourth of the amount sought. *See id.* at 206-10. Notably, he identified several billing practices as grounds for a significant reduction in fees. *Id.* at 209-10. These included (1) excessive amounts of time and research devoted to "relatively straightforward tasks," (2) vague, generic descriptions of the tasks performed, and (3) a "significant overlap of efforts by multiple counsel." *See id.* at 209-10. In the end, Judge Vitaliano reduced the number of compensable hours by 40%.[4] *Id.* at 210.

---

[4] The reason why the overall fee was roughly one-fourth of the amount sought is that in addition, Judge Vitaliano significantly reduced the hourly rates sought by Dewey to rates better reflective of the Eastern District market. *Id.* at 208. It is not necessary to do so here, as Dewey's requested hourly rates are already in line with those prevailing in this district. The overall award is much higher in *Cho* because one defendant did appear, and the case was tried. Here, there was an almost immediate default by all defendants and no discovery.

All of these billing infirmities are present here as well. As an initial matter, this case was seriously overstaffed. Dewey requests recovery for hours billed by 10 different legal personnel in this action, including one partner, 5 different associates, one staff attorney, one summer associate, and two paralegals. The raw numbers may overstate the overstaffing to some extent, as 90% of the hours were billed by two associates and one staff attorney. Still, the court does not see how the complexity of such a case required eight different attorneys; this should have been handled by one partner and one associate; and it did not require that three different attorneys each spend 150 hours on the matter. Staffing this litigation with a high number of attorneys ensured that (1) unnecessary time was spent in order for each attorney to become acquainted with the facts and the legal issues; and (2) unnecessary time was spent in communication or consultation with the other attorneys. For example, many of the billing entries reference communications that should not have been necessary given the simple nature of this case. In essence, a straightforward task ends up getting billed twice or even three times. Some minimal consultation is necessary, but the entries here go well beyond what the case required. Similarly, many of the time entries reference drafting and researching internal memoranda on relevant factual or legal issues. The entries on February 17, 2009 (4.5 hours), September 15, 2008 (4.39 hours), September 29, 2008 (7.25 hours), October 20, 2008 (6 hours), October 21, 2008 (5.25 hours), June 21, 2009 (3 hours), June 22, 2009 (5 hours) provide examples of these questionable practices. But regardless of whether two attorneys or eight worked on the matter, 580 hours is clearly an excessive amount of time to obtain a default judgment – in which no one (save Johnson's two brief letters) appeared for the defendants – in such a straightforward case.

It is worth briefly highlighting several areas where excessive time was spent. The court has attempted to add up the amount of time billed for researching, drafting, editing, and filing the complaint, and estimates that over 100 hours were spent on that task alone between July and October 2008.[5] The billing records are peppered with large chunks of time over that period dedicated to the complaint - specific entries as examples are on July 14 (4.75 hours), July 14 (4 hours), July 17 (5.5 hours), July 18 (3 hours), July 18 (4.5 hours), August 14 (5.5 hours), September 15 (4.5 hours), September 24 (10.25 hours), September 29 (5 hours), September 29 (7.25 hours), September 30 (6.5 hours), September 30 (5.5 hours), September 30 (3 hours), and October 1 (3 hours). To devote 100 hours and the combined efforts of three different attorneys to the formulation of a rather routine complaint is an inefficient, unreasonable amount of time to bill for a task of that nature. Similarly troubling is the number of hours expended in preparing Dewey's motion for default judgment, beginning on October 8, 2008 and going through January 2009 when Judge Block granted the motion. It is difficult to determine the exact number, but it seems clearly excessive given that that task is a mundane, non-complex aspect of litigation. Another example of excess is the amount of time billed to read my prior report and recommendations and file the appropriate objections. A review of the billing entries indicates that in the first two weeks of October 2009, two associates together devoted nearly 40 hours – the equivalent of an entire workweek – to researching, drafting, and editing objections on a limited, narrow, relatively simple issue of law. The relative simplicity of that task is out of all proportion to the amount of time billed. Another example would be the

---

[5] It is difficult to measure with exacting precision the amount of time spent on the complaint, because that task is often included with a description of another task - such as the entry for September 15 ("Prepare complaint and settlement agreement; Analyze facts"). Thus, the court feels that 100 hours is a reasonable estimate, with the proviso that the exact figure could deviate somewhat in either direction. But regardless of whether the number is 85, 100, or 120, it is clearly too much.

amount of time billed by the summer associate in June 2009 on research tasks and internal memoranda; no reasonable paying client would be willing to pay for such services, especially given the arc of the case and the number of other attorneys and the amount of other hours already billed. With regard to damages, on March 2, 2009 alone, three attorneys spent collectively 34 hours on the damages submissions. Given the amount of time already billed on that issue and its relative simplicity, that amount of time is excessive.

Lastly, some of the entries are described in vague, generic language that does not provide sufficient detail as to merit compensation. *See DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993); *Aiello v. Town of Brookhaven*, No. 94-CV-2622, 2005 WL 1397202, at *2-3 (E.D.N.Y. June 13, 2005). These sorts of entries may be found, for example, on July 2, 2008 ("Coordinating new case strategy with co-counsel"), July 25, 2008 ("Prepared filing of complaint"), August 14, 2008 ("Conferring with co-counsel regarding strategy"), September 8, 2008 ("Analyze claims against employers"), September 29, 2008 ("Update from L. Campbell on case developments"), October 3, 2008 ("Attending to issues related to media coverage"), October 20 and 27, 2008 ("Preparing for default application (filing)"), and January 9, 2009 ("Preparing for potential default ruling"). These fall short.

These entries are only intended as examples, but they recur throughout Dewey's submissions with too much frequency. In this regard, they are emblematic of a bloated fee application. In isolation, it might be difficult to quarrel with many of the particular entries in the invoices, or to say that on any given day, the attorney should not have engaged in a particular task, should not have billed for it, or should have spent far less time doing it. *See Grant*, 973 F.2d at 99. But courts are also expected to take into account their own familiarity and experience both "generally" and with

the particular case at hand, rather than attaining "exactitude" with respect to each individual billing entry. *See Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (citing cases); *Amato v. City of Saratoga Springs*, 991 F. Supp. 62, 65 (N.D.N.Y. 1998) (internal citations omitted). And on balance, given the court's experience with similar cases and familiarity with this one, a great many more hours were spent on this case than were reasonably necessary. *See Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (allowing district courts considering voluminous billing records to avoid "set[ting] forth item-by-item findings concerning what may be countless objections to individual billing items."); *Carey*, 711 F.2d at 1146-47.

This was not a case that should have required an inordinate amount of time, or one that raised especially novel or complex questions. Litigating a simple default should not have reasonably taken more than 150 to 200 hours, roughly a third of the 580 that were billed. *See Velez v. Vassallo*, 203 F. Supp. 2d 312, 316 (S.D.N.Y. 2002) (awarding $19,989.80 in attorneys' fees after FLSA default and defendants' post-judgment motion, via counsel, to vacate); *Mendez v. Nooch, Inc.*, No. 07-CV-11174, 2009 WL 666771, at * 5 (S.D.N.Y. Mar. 6, 2009) (awarding attorneys' fees of $7,940 in FLSA default); *Cao v. Chandara Corp.*, No. 00-CV-8057, 2001 WL 34366628, at *1 (S.D.N.Y. July 25, 2001) (awarding $3,450 in attorneys' fees following FLSA default). Accordingly, the court recommends that the plaintiffs' fee request of $102,762 be reduced by two-thirds, yielding a total of $34,254. *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (quoting *Carey*, 711 F.2d at 1146); *Kirsch*, 148 F.3d at 173 (finding no abuse of discretion in district court's use of percentage reduction); *LaBarbera v. J.E.T. Res., Inc.*, 396 F. Supp. 2d 346, 352 (E.D.N.Y. 2005) (approving an "across the board percentage reduction" to attorneys' fees application containing excessive hours); *Hempstead China*, 831 F.

Supp. at 1045 (reducing attorneys' fees by 40%). In recommending such a marked reduction, the court in no way wishes to dim Dewey's willingness to perform valuable *pro bono* services for clients in need. However, the court is hard pressed to believe that any reasonable paying client would be willing to pay what Dewey seeks to recover in such a straightforward FLSA default, and the same consideration should hold when the plaintiffs are represented *pro bono*. *Cf. Cho*, 524 F. Supp. 2d at 210 ("While the Court recognizes that *pro bono* work . . . provides associates at large firms with hands-on experience they might not receive otherwise – and the court commends the attorneys and their firm for taking on such work – it would not be fair to make defendants bear the cost of such training.").

To some extent the situation here highlights a difficulty in applying marketplace considerations, as *Arbor Hill* envisions, in determining fee awards. Here, the attorneys' fees and costs sought by the plaintiff more than double the amount the plaintiffs have obtained in damages, roughly $40,000 excluding interest. Presumably, a reasonable paying client would not have incurred attorneys' fees and costs twice the potential recovery – but for the possibility of a fee award, not bringing the claim at all here would have made more economic sense. It is difficult to attempt to predict conduct in a marketplace where clients know that if they prevail on their claims they will obtain recovery of their fees in addition to damages. Of course, *Arbor Hill* does not stand for the proposition that attorneys' fees may not exceed damages, or even that fees and damages must be proportional to each other, but it is nevertheless difficult to reconcile *Arbor Hill*'s guiding language for calculating a presumptively reasonable fee with the not uncommon outcome in which the award of fees and costs eclipses the damages award.

Here, Dewey requests over $100,000, which represents nearly 600 hours or the equivalent of four full months of work on this case. Counsel has performed quite competently, but in the court's experience, obtaining a default judgment in a straightforward FLSA default need not require so many billable hours. Taking into account the above considerations, and on the basis of the simple nature of the case, the overstaffing, and the inclusion of a highly excessive number of hours worked, it is appropriate to trim the attorneys' fees award to $34,254.00. That figure is based on a reasonable hourly rate and a reduction of the number of hours worked to a more reasonable level. Awarding attorneys' fees is not a science, of course, and is not susceptible to exacting precision. *See Kirsch*, 148 F.3d at 173; *Carey*, 711 F.2d at 1146; *Amato*, 991 F. Supp. at 65 (internal citations omitted). The amount seems to the court to be a reasonable fee in view of the issues raised, the work performed, and the court's wide discretion in awarding attorneys' fees. *See Barfield*, 537 F.3d at 151.

**B.    Costs**

Dewey also requests an award in costs of $1,561.64. The submissions itemize the relevant costs, and the breakdown of the total amount. The great majority of that amount consists of filing fees ($350), service of process expenses ($479), and reproduction fees ($404.20). The amount sought appears reasonable. Therefore, the court recommends a costs award of $1,561.64.

## CONCLUSION

For the reasons stated above, the court respectfully recommends that the plaintiff be awarded $34,254.00 in attorneys' fees and $1,561.64 in costs.

\*        \*        \*        \*        \*        \*        \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court with a copy to the undersigned within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir. 1992).

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
June 21, 2010